UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERRY MCGEE | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-2159 |
| | § | |
| MRC ENERGY COMPANY AND | § | |
| MATADOR RESOURCES COMPANY, | § | |
|     Defendants. | § | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO VACATE FINAL ARBITRATION AWARD

---

**Mark A. Shoffner**
State Bar No. 24037490
mshoffner@bellnunnally.com
**Alana K. Ackels**
Texas Bar No. 24066760
aackels@bellnunnally.com
**Mason G. Jones**
State Bar No. 24116586
mjones@bellnunnally.com

**BELL NUNNALLY & MARTIN LLP**
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Telephone: 214/740-1400
Facsimile: 214/740-1499

**Dated: September 17, 2021**

**ATTORNEYS FOR DEFENDANTS
MRC GENERY COMPANY and
MATADOR RESOURCES COMPANY**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................ii

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ...................................................................................... 3

III.    ARGUMENT AND AUTHORITIES..................................................... 7

      A.      The Federal Arbitration Act governs the Motion to Vacate .......................... 7

      B.      Arbitration awards are presumed valid, and judicial review is exceedingly deferential ...................................................................... 8

      C.      The arbitrator facilitated a fair hearing on the merits, and McGee failed to prove the exclusion of any evidence that deprived her of a fair hearing ...................................................................... 10

            1.      Arbitrators are afforded broad discretion on evidentiary matters ...................................................................... 10

            2.      Judge Jenevein did not abuse his discretion in his ruling regarding Shane Hammons .................................................. 12

      D.      McGee's post-arbitration attacks on the arbitrator's impartiality and character are without merit and do not warrant vacatur............................ 17

      E.      McGee failed to object to the arbitrator's now-alleged partiality and has therefore waived any objection.................................................. 22

IV.     CONCLUSION...................................................................................... 24

CERTIFICATE OF SERVICE ........................................................................ 25

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(s)**

*21st Fin. Services, L.L.C. v. Manchester Fin. Bank*,
  747 F.3d 331 (5th Cir. 2014) .................................................................................9

*Allied–Bruce Terminix Companies, Inc. v. Dobson*,
  513 U.S. 265 (1995)................................................................................................7

*American Laser Vision, P.A. v. Laser Vision Institute, LLC.*,
  487 F.3d 255 (5th Cir. 2007) .................................................................................8

*Bernstein Seawell & Kove v. Bosarge*,
  813 F.2d 726 (5th Cir. 1987).................................................................................22

*Brabham v. A.G. Edwards & Sons Inc.*,
  376 F.3d 377 (5th Cir. 2004) .................................................................................9

*Castleman v. AFC Enters., Inc.*,
  995 F. Supp. 649 (N.D. Tex. 1997) (Sanders, J.) ...............................................11

*Cooper v. WestEnd Capital Mgmt., L.L.C.*,
  832 F.3d 534 (5th Cir. 2016) .........................................................................10, 17

*Credit Suisse Securities (USA) LLC v. Carlson*,
  2020 WL 837428 (S.D. Tex. Feb. 20, 2020) .......................................................17

*Delta Mine Holding Co. v. AFC Coal Props., Inc.*,
  280 F.3d 815 (8th Cir. 2001) ...............................................................................22

*Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.*,
  2002 WL 1489521 (N.D. Tex. 2002) (Lindsay, J.) .............................................23

*Gateway Techs. Inc. v. MCI Telecomms. Corp.*,
  64. F.3d 993, 998 (5th Cir. 1995) ........................................................................23

*Int'l Chem. Workers Union v. Columbian Chems. Co.*,
  331 F.3d 491 (5th Cir. 2003)...............................................................10, 11, 17

*In re L & L Kempwood Assocs., L.P.*,
  9 S.W.3d 125 (Tex. 1999)......................................................................................7

*In re Olshan Found. Repair Co., LLC,*
   328 S.W.3d 883 (Tex. 2010) ...................................................................7

*Laws v. Morgan Stanley Dean Witter,*
   452 F.3d 398 (5th Cir. 2006) ...............................................11, 16, 17, 18

*Mantle v. Upper Deck Co.,*
   956 F. Supp. 719 (N.D. Tex. 1997) ...................................................8, 18

*National Post Office Mailhandlers, Watchmen, Messengers & Group Leaders*
   *Div. Laborers Int'l Union of N. Am., AFL-CIO v. United States Postal Serv.,*
   751 F.2d 834 (6th Cir. 1985) .................................................................11

*Pac. Breakwater W., Inc. v. Wellness Int'l Network, Ltd.,*
   No. Civ. A. 3:97-CV-1556, 2000 WL 276812 (N.D. Tex. Mar. 9, 2000) ......................8, 17

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.,*
   476 F.3d 278 (5th Cir. 2007) ...................................................17, 20, 21

*Rain CII Carbon, LLC v. ConocoPhillips Co.,*
   674 F.3d 469 (5th Cir. 2012) ...................................................................8

*Robinson v. Home Owners Mgmt. Enterprises, Inc.,*
   590 S.W.3d 518 (Tex. 2019) .....................................................................8

*Sarofim v. Trust Co.,*
   440 F.3d 213 (5th Cir. 2006) ...................................................................8

*Tex. Health Mgmt., LLC v. Healthspring Life & Health Ins. Co., Inc.,*
   05-18-01036-CV, 2020 WL 3071729 (Tex. App.—Dallas June 10, 2020, no
   pet.) ..........................................................................................11, 20, 23

*U.S. v. Fiske,*
   968 F.Supp. 422 (E.D. Ark. 1996) .........................................................20

*Vantage Deepwater Co. v. Petrobras Am., Inc.,*
   966 F.3d 361 (5th Cir. 2020) ...................................................................8

*Weber v. Merrill Lynch Pierce Fenner & Smith,*
   455 F.Supp.2d 545 (N.D. Tex. 2006) (Fitzwater, J.) ............................18

**Statutes**

9 U.S.C. § 2 ............................................................................................................7

9 U.S.C. § 10(a) ......................................................................................................9

9 U.S.C. § 10(a)(3) ...............................................................................................16

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERRY MCGEE | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-2159 |
| | § | |
| MRC ENERGY COMPANY AND | § | |
| MATADOR RESOURCES COMPANY, | § | |
|     Defendants. | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
TO VACATE FINAL ARBITRATION AWARD**

Defendants MRC Energy Company and Matador Resources Company (collectively "Defendants" or "Matador") file this Response in Opposition to Plaintiff Sherry McGee's ("McGee") Motion to Vacate Final Arbitration Award (the "Motion to Vacate").

## I.   INTRODUCTION

Over three years ago, McGee first made unfounded allegations of unlawful discrimination against Matador. Matador consistently disputed the charges, vigorously defended itself, and ultimately prevailed in arbitration after a three-day final hearing.

Now, after an adverse outcome, McGee seeks to re-litigate this case and start over despite the "exceeding deference" a court must provide to the arbitration award. The applicable standard of review has been described as "among the narrowest known to the

law." A court may not vacate an arbitration based on an error in application of the law or a mistake in fact-finding, but requires some showing of misconduct.

In the face of this steep standard, McGee offers two baseless arguments in an attempt to have the Court vacate the Final Award. *First*, McGee asserts that vacatur is warranted because the arbitrator declined to hear a portion of her testimony regarding a purported comparator under the Equal Pay Act. McGee fails to disclose that she never specifically identified this employee as a comparator or pursued information about his qualifications or compensation during the discovery period—which is why the arbitrator did not permit McGee to offer speculative testimony on this matter. *Second*, McGee argues that the Final Award should be set aside because the arbitrator's cited social media activity—that is wholly unrelated to the parties or the claims in this case—demonstrated "evident partiality." To support her arguments, McGee repeatedly and unprofessionally attacks the arbitrator on a personal level for things having nothing to do with this matter.

McGee's arguments are wholly without merit and do not meet the extraordinary standard required for vacatur of the Final Award under the Federal Arbitration Act. After thorough pre-hearing briefing, three days of testimony from seven witnesses (including four called by McGee), and extensive post-hearing briefing, the arbitrator entered a detailed and reasoned Final Award. Based on the evidence, he determined that McGee failed to prove her claims under Title VII and the Equal Pay Act. Specifically, the arbitrator found that McGee's "dissatisfaction, which she admitted, and which was

apparent to those around her, led to her termination." The arbitrator then concluded: "Claimant was terminated because she hated her job, and that contempt was undermining morale" and entered a take-nothing award in Matador's favor. McGee did not meet her burden in arbitration, and she likewise fails here to meet the elevated burden required to support an order of vacatur. The Court should deny McGee's Motion to Vacate Final Arbitration Award.

## II. BACKGROUND

1. Matador hired McGee in the summer of 2016. McGee was hired as an operations engineer, even though her degree was in geological engineering, rather than petroleum or mechanical engineering, as is typical with engineers at Matador.

2. During the onboarding process, McGee signed an Employment Agreement that, among other things, required the arbitration of all claims arising out of her employment at Matador by a single arbitrator. MRC App. 0043 – 0051. The Employment Agreement stated that the decision of the arbitrator would be reduced to writing and would be "final, binding, and conclusive." MRC App. 0046. McGee worked for a year and a half, and Matador gave her a promotion and multiple raises and bonuses during that time. In early 2018, the company assigned McGee to a new engineering and geologic group that used cutting-edge technology to monitor and geo-steer Matador's drilling rigs in real time from its Dallas office to help keep Matador's wellbores in the preferred formation during drilling. MRC App. 0058 – 0059. This was the type of role Matador

envisioned for McGee when she was hired, and McGee was assured that the move was not a demotion and that this position presented her with an opportunity for advancement in the company. MRC App. 0073 – 0074.

3.      McGee disliked this assignment and responded with a negative and unprofessional attitude. MRC App. 0075 – 0076. Ultimately, when her negativity and disruptiveness started to cause dysfunction and showed no signs of improving, and after multiple second chances, Matador made the decision to terminate McGee's employment.

4.      After Matador terminated McGee, she filed a Demand for Arbitration with the American Arbitration Association ("AAA"). MRC App. 0002, ¶ 3; MRC App. 0006 - 0017. McGee asserted three claims arising out of federal employment statutes: (1) violation of the Equal Pay Act (29 U.S.C. § 206(d)); (2) retaliation in violation of the Equal Pay Act (29 U.S.C. § 216(b)); and (3) pregnancy discrimination under Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978 (42 U.S.C. § 2000e, *et seq*.). *Id*.

5.      Following McGee's initiation of arbitration, the parties began the process of selecting an arbitrator, and the AAA provided a slate of potential arbitrators. MRC App. 0002, ¶ 4; MRC App. 0018 – 0020. Thereafter, the parties each submitted a ranking of the proposed arbitrators and had the opportunity to strike any names that they wanted to exclude.

6.      On August 16, 2019, in accordance with the applicable rules, the AAA notified the parties of the appointment of former Dallas County Court at Law Judge Robert Jenevein. <u>MRC App. 0002, ¶ 5; MRC App. 0021</u>. This means both sides presumably ranked Judge Jenevein highly on their respective lists. Judge Jenevein, who ran for judicial office on the Republican ticket, served four years on the bench and oversaw more than 250 jury trials during that time. The AAA provided the parties with Judge Jenevein's Notice of Appointment and his corresponding disclosures. <u>MRC App. 0003, ¶ 6; MRC App. 0022 - 0024</u>. The AAA directed the parties to raise any objections with the arbitrator's appointment within five days. <u>MRC App. 0002 – 0003, ¶ 5; MRC App. 0021</u>.

7.      Prior to his appointment, Judge Jenevein disclosed, among other things, that he and Plaintiff's lead counsel, Keith Clouse, had known each other professionally for more than 20 years. <u>MRC App. 0003, ¶ 6; MRC App. 0022</u>.

8.      Neither Matador nor McGee objected to Judge Jenevein's appointment. On August 28, 2019, the AAA confirmed Judge Jenevein as the arbitrator. <u>MRC App. 0003, ¶ 7; MRC App. 0025 - 0026</u>.

9.      Thereafter, the parties engaged in the discovery process, including written discovery, document production, and the depositions of McGee and Billy Goodwin, Matador's Executive Vice President and COO of Drilling, Completions, and Production.

10.      During discovery, McGee requested pay records for the employees she presumably viewed as comparators: (1) Blake Hermes, (2) Travis Wolf, (3) Fred Mihal, (4)

Adam Lange, (5) Patrick Walsh, (6) Josh Passauer, (7) Tyler Brooking, (8) Travis Kerr, (9) Ryan Knebel, (10) Garrett Hunt, (11) Jackson Driggs, and (12) Omar Enriquez, although she ultimately only presented two as supposed comparators at the final hearing. MRC App. 0003, ¶ 9; MRC App. 0027 - 0029. She never identified former employee Shane Hammons as a comparator or specifically asked for information about him during discovery. *Id*.

11.    Also during discovery, McGee requested pay data and records for all employees in MaxCom (the department in which McGee worked at Matador), but Matador objected to the overbroad discovery request and provided information for only the relevant comparators in MaxCom. *Id*. Despite the fact that written discovery was exchanged over 9 months before the final hearing, McGee never filed a motion to compel or otherwise sought relief from the arbitrator to test Matador's objections or to specifically seek any data related to Hammons. *Id*.

12.    On February 10-12, 2021, Judge Jenevein presided over the final hearing. McGee's case-in-chief consumed the majority of the three-day hearing, and no witness was excluded.   Judge Jenevein even granted McGee permission, over objection by Matador, to call one of her witnesses out of order after she concluded her case-in-chief, although in the end she failed to present that particular witness.

13.    On April 27, 2021, following extensive post-hearing briefing, Judge Jenevein entered a reasoned, Final Award and found: "[O]n all of Claimant's claims,

Respondents are entitled to a take-nothing award, which this Arbitrator hereby enters."

<u>MRC App. 0004 - 0005, ¶ 15; MRC App. 0036 - 0042</u>.

14.     On July 23, 2021, Plaintiff filed a Motion to Vacate Final Arbitration Award in the 134th District Court of Dallas County, Texas.

15.     On September 10, 2021, Matador removed this matter to the United States District Court for the Northern District of Texas.

### III.     ARGUMENT AND AUTHORITIES

**A.  The Federal Arbitration Act governs the Motion to Vacate.**

The Federal Arbitration Act ("FAA") applies to the arbitration provision in McGee's Employment Agreement and provides the standard by which to adjudicate the Motion to Vacate. The FAA applies to a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has held this statutory language is to be afforded a broad interpretation and is the functional equivalent of "affecting" interstate commerce. *See Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). Indeed, the FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999). Moreover, the Texas Supreme Court has held that the FAA applies to an arbitration agreement unless the parties explicitly indicate its exclusion. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 890–91 (Tex. 2010) (holding the trial court

abused its discretion in refusing to apply the FAA rather than the Texas Arbitration Act because the agreement did not specifically exclude application of the FAA).

Here, the arbitration provision does not specify whether the FAA or TAA applies, so the FAA governs. Moreover, McGee's employment at Matador affected interstate commerce. Matador is an oil and gas exploration company with operations in various states, including Texas, New Mexico, and Louisiana. MRC App. 0056 – 0057. McGee's employment with Matador related to the company's drilling operations in New Mexico and she traveled there from the Dallas office for work on some occasions.[1]

## B. Arbitration awards are presumed valid, and judicial review is exceedingly deferential.

Under the FAA, judicial review of an arbitration award is exceedingly deferential. *American Laser Vision, P.A. v. Laser Vision Institute, LLC.*, 487 F.3d 255, 258-259 (5th Cir. 2007); *Pac. Breakwater W., Inc. v. Wellness Int'l Network, Ltd.*, No. Civ. A. 3:97-CV-1556, 2000 WL 276812, at *6 (N.D. Tex. Mar. 9, 2000). This review "has been described as among the narrowest known in the law." *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 726 (N.D. Tex. 1997). In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily narrow. *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012); *see also Sarofim v. Trust Co.*, 440 F.3d 213, 216 (5th Cir.

---

[1] Regardless of the application of the FAA or the TAA, the "Texas and federal vacatur standards do not significantly differ." *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 375 n.2 (5th Cir. 2020). While not identical, the TAA grounds for vacatur of an arbitration award are similar to those in the FAA. *Robinson v. Home Owners Mgmt. Enterprises, Inc.*, 590 S.W.3d 518, 526 n.31 (Tex. 2019)

2006) (an arbitrator's award is presumed to be valid, and judicial review is "exceedingly deferential" and "extraordinarily narrow"). Federal courts must defer to the arbitrator's decision if at all possible and must resolve all doubts or uncertainties in favor of upholding the award. *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385 (5th Cir. 2004).

The narrow grounds for vacatur of an arbitration award are set forth in the FAA. *See* 9 U.S.C. § 10(a). A court may only vacate an arbitration award upon the showing by a party to the arbitration that:

1) the award was procured by corruption, fraud, or undue means;

2) there was evident partiality or corruption in the arbitrators;

3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Review of an arbitration award is limited to "give deference to the decisions of the arbitrator." *21st Fin. Services, L.L.C. v. Manchester Fin. Bank*, 747 F.3d 331, 335 (5th Cir. 2014). In a dispute over an arbitration award, "[t]he <u>burden of proof is on the party seeking to vacate the award</u>, and <u>any doubts or uncertainties must be resolved in favor</u>

of upholding it." *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016) (emphasis added).

**C.   The arbitrator facilitated a fair hearing on the merits, and McGee failed to prove the exclusion of any evidence that deprived her of a fair hearing.**

McGee's first attack on the Final Award is to complain of an issue that manifested itself due to her lack of diligence in discovery. During discovery, McGee never identified former Matador employee Shane Hammons as a comparator for the EPA claim or specifically asked for information about his pay. Instead, she attempted to deem Hammons a "comparator" during the final hearing based on speculation about his salary and qualifications.[2] Judge Jenevein appropriately excluded Hammons as a comparator due to McGee's lack of evidence to support such a characterization.

*1.   Arbitrators are afforded broad discretion on evidentiary matters.*

Arbitrators have "broad discretion to make evidentiary decisions" and are not bound by the formal rules of procedure and evidence. *See Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003). Courts should not "look over the shoulder of the Arbitrator in order to alter his credibility decisions," but rather should

---

[2] In fact, McGee admitted that she had no comparator evidence for Hammons in her pre-hearing brief when she noted that Matador did not "provide salary information for Hammons." *See* MRC App. 0033 - 0035. Matador, of course, did not produce this data based on its view that Hammons was not a proper comparator. McGee never challenged this position in discovery. But in her pre-hearing brief, McGee requested the extreme remedy of an adverse inference that Hammons' salary was higher than McGee's. A party requests an adverse inference when it lacks evidence on that point. McGee's acknowledgment further supports Judge Jenevein's determination that Hammons was "out" as a comparator.

**DEFENDANTS' CROSS-MOTION FOR SUMMARY**
**JUDGMENT AND BRIEF IN SUPPORT**                                              **PAGE 10**

"only consider whether the Arbitrator provided a fair and full hearing consistent with the FAA." *Id.* at 496.

When an arbitrator refuses to hear evidence because he deems it inadmissible, he does not act in a manner that is fundamentally unfair so as to warrant vacatur. *Tex. Health Mgmt., LLC v. Healthspring Life & Health Ins. Co., Inc.*, 05-18-01036-CV, 2020 WL 3071729, at *9 (Tex. App.—Dallas June 10, 2020, no pet.). An arbitrator's judgment as to whether evidence is or is not relevant to his determination is a necessary part of arbitration, and a court's power to disturb such discretionary determinations is quite limited. *National Post Office Mailhandlers, Watchmen, Messengers & Group Leaders Div. Laborers Int'l Union of N. Am., AFL-CIO v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985).

As the Fifth Circuit has held, to constitute misconduct requiring vacatur of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that a party was deprived of a fair hearing. *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006); *see also Castleman v. AFC Enters., Inc.*, 995 F. Supp. 649, 653 (N.D. Tex. 1997) (Sanders, J.) (holding that arbitration awards cannot be set aside due to exclusion of contested evidence unless it prevented a party from receiving a "fundamentally fair hearing"). McGee does not even make the argument that she failed to receive a fair hearing.

**2.** *Judge Jenevein did not abuse his discretion in his ruling regarding Shane Hammons.*

McGee argues that vacatur of the Final Award is warranted because Judge Jenevein "exceeded his powers by refusing to hear evidence material to the controversy." Specifically, McGee contends that the arbitrator refused to hear evidence related to Shane Hammons—a purported comparator under the EPA—including his "experience, background, job duties, salary, or employment at Matador." McGee now argues that she had only <u>two</u> comparators at Matador and that the arbitrator excluded testimony and evidence related to one of them.  McGee's arguments are incorrect and untethered to the facts. She also omits critical information and context.

McGee protests that there was an "exclusion of evidence." This is a gross mischaracterization. In fact, at the hearing, McGee failed to offer any actual "evidence" that Hammons was a proper comparator at all.  Judge Jenevein did not exclude evidence about Hammons: McGee did not have any to offer. McGee lacked such evidence because she never specifically sought—and certainly never moved to compel—any information about Hammons in discovery. When it became clear that McGee had not garnered relevant evidence on this point during discovery, Judge Jenevein ruled that Hammons was "out" as a comparator.

As a notable example of her lack of evidence on this point, McGee admittedly did not even know Hammons' salary—and she offered no other evidence of what he was paid. (Q: Do you know how much Shane was making at Matador? A: I do not.) <u>MRC</u>

App. 0061. As a threshold matter, it is a legal impossibility to establish an EPA violation absent evidence that a female employee was making less than a similarly situated male employee. McGee, by her own admission, could not have provided this critical evidence as to Hammons and thus lacked any basis to characterize him as a comparator.

Matador's counsel objected McGee's speculative testimony about Hammons, noting that McGee had never identified him as a comparator during discovery, naming him for the first time in her pre-hearing brief filed on February 4, 2021—**six days before the final hearing**. MRC App. 0004, ¶ 10; MRC App. 0033 - 0035. There was nothing in the record to show Hammons was a comparator, so guesswork about his qualifications was irrelevant. McGee had requested pay records for twelve employees by name during discovery, individuals she presumably viewed as comparators, Shane Hammons was not among them. And when Matador objected to McGee's overbroad request for information about *all* employees in McGee's department, she never challenged that objection or moved to compel. In short, McGee never identified Hammons as a comparator during the discovery period or specifically asked for information about him. MRC App. 0027 – 0029 and MRC App. 0062 – 0063.

As a result of McGee's discovery inaction, at the final hearing she could offer no actual evidence about whether Hammons was or was not a proper comparator—only self-serving guesswork that he might have been. Without any supporting evidence, the

arbitrator sustained Matador's objection to her testimony speculating about Hammons'

salary and qualifications as a comparator:

> THE COURT:    Okay. Well -- all right. Ms. Avant, I think it's your responsibility to test objections. I guess I'm going to sustain that objection. There's no order compelling a different response to that interrogatory.

> MS. AVANT:    All right. So are you -- is your ruling that we cannot ask the questions with regard to Shane Hammons -- is that what you're saying? I just want to make sure I understand what you're stating.

> THE COURT:    Yes -- I think you have correctly restated my ruling. Yes -- Hammons is out.

> MS. AVANT:    I didn't catch the last part -- you said Hammons is out?

> THE COURT:    Yes, ma'am -- as a comparator.

*See* MRC App. 0064.

Based on this record, the arbitrator exercised his discretion and was justified in ruling

that Hammons was "out" as an EPA comparator.

And, contrary to McGee's argument to this Court, she was not deprived of offering

evidence on one of only two comparators. *First*, McGee identified Hammons on her

amended witness list, but she did not call him to testify. MRC App. 0030 - 0032. Given

McGee's lack of personal knowledge as to Hammons' qualifications and salary, he would

have been the obvious witness to provide testimony on these topics. McGee, however,

did not call or seek to call Hammons or any other purported comparator as witnesses in

this case. *Second*, the arbitrator heard evidence about another purported comparator—

Blake Hermes—who apparently McGee no longer views as a comparator after the hearing. (*see, e.g.*, <u>MRC App. 0065 - 0066</u>; <u>MRC App. 0082 - 0083</u>). Judge Jenevein considered the evidence and found that at least three factors appropriately differentiated compensation between McGee and Hermes: (1) he had significantly more drilling experience, (2) he had been through Matador's MaxOps training program, and (3) his performance reviews were consistently higher that McGee's. *Third*, the arbitrator heard copious evidence about McGee's other self-selected comparator, Fred Mihal. In her closing, McGee's counsel stated definitively: "Ms. McGee and Mr. Mihal are comparators." <u>MRC App. 0084</u>. But the evidence, as determined by the arbitrator, established that Mihal was different than McGee in numerous meaningful ways, including education, degree, prior pay, competing offers, experience, and performance. The arbitrator concluded: "These are meaningful factors employers should be encouraged to consider when making compensation decisions." <u>MRC App. 0039</u>.

Finally, allowing additional testimony about Hammons would not have helped McGee's case. This is because McGee's own testimony gave Judge Jenevein ample basis to exclude Hammons as a comparator. He heard evidence directly from McGee that—despite her characterizations now—Shane Hammons was not an engineer like McGee and his title was "analyst." <u>MRC App. 0060</u>. McGee's counsel described Hammons as a "business and finance guy," as opposed to a geological engineer like McGee. <u>MRC App.</u>

0055. The arbitrator could reasonably conclude from these statements alone that Hammons was not a proper comparator to McGee under the law.

McGee's motion fails to provide any evidence that the arbitrator's ruling deprived her of a fair hearing. *See Morgan Stanley Dean Witter*, 452 F.3d at 399. Without any evidentiary support, McGee claims that she "*would have*" shown that Hammons was a proper comparator, that Matador paid Hammons more than McGee, that Hammons' background did not warrant this pay differential, and that Hammons did not have specialized experience or a competing employment offer. But McGee cannot point to the exclusion of any actual evidence (documents, discovery responses, or non-speculative testimony) on these points. She had none.

The record shows that McGee was provided with ample opportunity to present evidence in support of her EPA claim. McGee has presumably chosen to make this argument because all other testimony and exhibits she proffered was admitted (some over Matador's objection). McGee was given ample time—all that she asked for—to call witnesses and offer available evidence to make her case. The arbitrator's decision to exclude Hammons as a comparator under the circumstances here does not rise to the level of "refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).

"When an arbitrator refuses to hear evidence because, after reasoned consideration, he deems it inadmissible, he does not act in a manner that is fundamentally

unfair." *Pac. Breakwater W.*, 2000 WL 276812, at *4. This Court should not now second guess and "look over the shoulder of the Arbitrator," particularly on so thin an argument as this one. *See Int'l Chem. Workers Union*, 331 F.3d at 496.

### D. McGee's post-arbitration attacks on the arbitrator's impartiality and character are without merit and do not warrant vacatur.

McGee's other argument is that the Final Award should be vacated because the arbitrator demonstrated "evident partiality" against her position.

Just as with her evidentiary complaints above, McGee cannot carry her high burden to overturn the Final Award on this basis either. The Fifth Circuit has held that "evident partiality" conveys a stern standard. *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 282 (5th Cir. 2007). Partiality means bias, while "evident" is defined as "clear to the vision of understanding" and is synonymous with manifest, obvious, and apparent. *Id*. at 282. Evident partiality means more than a mere appearance of bias. It requires "a concrete, not speculative impression of bias" and calls for "upholding arbitral awards **unless bias was clearly evident in the decisionmakers**." *Id*. at 281, 286 (emphasis added).

The arbitrator's alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative. *Morgan Stanley Dean Witter*, 452 F.3d at 399. Indeed, "for the arbitration award to be vacated," the party challenging the award "must produce specific facts from which a reasonable person <u>would have to conclude</u> that the arbitrator was partial to" its opponent. *WestEnd*, 832 F.3d at 545; *Credit*

*Suisse Securities (USA) LLC v. Carlson*, 2020 WL 837428, at *2 (S.D. Tex. Feb. 20, 2020). The party asserting evident partiality <u>has the burden of proof</u>, and the party carrying this <u>onerous burden</u> must produce specific facts. *Mantle*, 956 F. Supp. at 729. A party can establish "evident partiality by demonstrating that the arbitrator failed to disclose relevant facts or that he displayed actual bias <u>at the arbitration proceeding</u>." *Weber v. Merrill Lynch Pierce Fenner & Smith*, 455 F.Supp.2d 545, 549 (N.D. Tex. 2006) (Fitzwater, J.).

Here, McGee presents no evidence or "specific facts" that would indicate or even suggest that Judge Jenevein was partial to Matador. Other than the ultimate outcome in Matador's favor, McGee does not identify any action by Judge Jenevein demonstrating his supposed bias. At the Final Hearing, McGee had a majority of the time to call witnesses and present her evidence. Moreover, Judge Jenevein excluded no exhibits (some over Matador's objection) and permitted McGee to call a witness after she concluded her case-in-chief (also over Matador's objection), even though that witness never appeared. McGee's argument relies entirely upon speculation that the arbitrator *might* have perceived McGee as a liberal woman and would, therefore, be theoretically biased against her generally. McGee acknowledges the speculative nature of her argument by stating that: "… the Arbitrator ***may well have*** perceived [McGee] to be 'liberal.'" This type of guesswork is quintessentially remote, uncertain, and speculative. *Morgan Stanley Dean Witter*, 452 F.3d at 399.

To support this specious argument, McGee cites primarily to a tweet that was purportedly "liked" (not authored) by the arbitrator that refers to liberal woman as "angry and miserable." McGee then argues that she was angry (without cites to the record) and she might have been perceived as liberal (without cites to the record), so the arbitrator must have been evidently partial against her position in the case.

But speculation is all that McGee can offer, because her political or cultural views were not at issue and were never part of this case. She was not asked about her political ideology and there is no evidence in the record whether she is "liberal" or "conservative." McGee was a geological engineer from Alaska who had spent the bulk of her career working for oil and gas companies. The arbitrator *might* well have perceived her as conservative given such a history. We simply do not know as that matter was not at issue in this case. There was nothing in the record or at the final hearing that even addressed these types of questions because these were not issues relevant to this case, and there is no evidence to support McGee's contention.

McGee's motion contains additional screenshots of what she purports to be the arbitrator's Twitter activity.  None of these social media posts relate in any way to the parties or issues at stake in this matter.  Rather, they deal with general political and social topics, all of which are completely remote and irrelevant to this case. McGee makes a series of personal, *ad hominem* attacks on Judge Jenevein that are gratuitous and unprofessional. McGee asserts, with little explanation, that this social media activity

establishes "evident partiality" against her. This argument strains credulity and does not come close to the standard required to vacate an arbitration award under the FAA.

At a more fundamental level, McGee's motion is effectively an attack on judicial independence. Virtually all judges—federal or state in Texas—were involved in political and civic activities before their appointment or election and many hold well-publicized views after ascending to the bench. After appointment or election, however, judges and arbitrators are expected to put political considerations aside and decide issues on the merits, even cases that feature controversial issues or figures on the other sides of the political aisle. *U.S. v. Fiske*, 968. F. Supp. 433, 439 (E.D. Ark. 1996). An arbitrator, or a judge, is capable of fairly adjudicating a case despite having personal views on political or cultural issues—even views that *might* differ with a litigant's own. This is even more true where, as here, the dispute has nothing to do with politics or culture. Judicial officers and arbitrators like Judge Jenevein take an oath to decide the cases before them with impartiality. McGee's theory would impugn the ability of any arbitrator or judge who publicly reveals political or cultural opinions from sitting in judgment and would threaten every ruling with an after-the-fact collateral attack by a losing party.

To support her "evident partiality" argument, McGee cites to *Texas Health Management* and *Positive Software Solutions, Inc.*[3] Neither support her position and both

---

[3] *Texas Health Mgmt., LLC v. Healthspring Life & Health Ins. Co., Inc.*, 05-18-01036-CV, 2020 WL 3071729 (Tex. App.—Dallas June 10, 2020, no pet.); *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 281 (5th Cir. 2007).

upheld an arbitrator's award against an "evident partiality" challenge. In fact, McGee fails to provide this court with any relevant authority that supports vacatur of the final award, and instead cherry picks quotes from case law that ultimately reject the argument she has made.

It is clear what has happened here. Like in *Positive Software*, upon losing in arbitration, McGee conducted an investigation into the arbitrator's background. *See Positive Software Solutions,* 476 F.3d at 281. There, the losing party discovered a relationship between the arbitrator and one of the attorneys involved in the case and unsuccessfully tried to exploit it to achieve vacatur. *Id.* Here, the losing party turned to the Internet and discovered social media activity that is wholly unrelated to the parties, attorneys, claims, witnesses, or testimony at issue. As the Fifth Circuit held: "[a]warding vacatur in situation such as this would seriously jeopardize the finality of arbitration. Just as happened here, losing parties would have an incentive to conduct intensive, after-the-fact investigations to discover the most trivial of relationships, most of which they likely would not have objected to if disclosure had been made." *Id.* at 285. The court concluded that the draconian remedy of vacatur is not warranted absent a concrete showing of bias and evidence of a "significant compromising relationship" <u>between the arbitrator and a party to the arbitration</u>. *Id*. at 286.

### E. McGee failed to object to the arbitrator's now-alleged partiality and has therefore waived any objection.

McGee's motion to vacate should also be denied as her complaints are untimely and waived. As addressed above, the AAA provided the parties with the opportunity to object to the arbitrator's appointment. MRC App. 0021. Furthermore, the AAA Employment Rules provide a mechanism whereby a party can object to the continued service of an arbitrator.

A party seeking to vacate an arbitration award based on an arbitrator's evident partiality generally must object during the arbitration proceedings. *See Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 732 (5th Cir. 1987). The failure to timely object to the arbitrator results in waiver of the right to object. *Id.*; *see also Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821 (8th Cir. 2001) ("Even when a neutral arbitrator is challenged for evident partiality, the issue is deemed waived unless the objecting party raised it to the arbitration panel.").

As addressed above, McGee contends that the arbitrator's Twitter activity evidences bias for Matador and/or against her. McGee references 10 Tweets (or Twitter interactions), nine of which have date stamps ranging from June 25, 2020 to January 6, 2021, with only one occurring later, on April 23, 2021.

The final arbitration hearing was held February 10-12, 2021. Thus nine of the ten complained of Tweets (or Twitter likes) were public well before the final hearing. Furthermore, the arbitrator's social media activity was readily available to the parties

prior to his appointment by the AAA. In addition, Judge Jenevein ran for judge as a Republican and he disclosed that he has known Plaintiff's lead counsel, Keith Clouse, for over 20 years. Plaintiff knew (or could have known with any due diligence) of Judge Jenevein's political leanings, to the extent those are even relevant. McGee, however, did not object to the arbitrator's appointment. In fact, McGee only raised an issue with the arbitrator's social media activity and supposed political leanings after her defeat in arbitration.

This is precisely the type of conduct the law prohibits. A party who knows or has reason to know of an arbitrator's alleged bias but remains silent pending the outcome of the arbitration waives the right to complain. *Tex. Health Mgmt.*, 2020 WL 3071729, at *4; *see also Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.*, 2002 WL 1489521, at *5 (N.D. Tex. 2002) (Lindsay, J.) (waived partiality objection by failing to object to continued service after disclosure).  A party may not lay behind the log during an arbitration and then collaterally attack that proceeding on grounds not raised before the arbitrator when the result turns out to be adverse. *Id*; *Gateway Techs. Inc. v. MCI Telecomms. Corp.*, 64. F.3d 993, 998 (5th Cir. 1995) (stating a party cannot stand by during arbitration, withhold certain arguments, and upon losing, raise those arguments in court).

McGee now contends that the arbitrator's social media activity rendered him incapable of fairly adjudicating this case. However, McGee never objected to the

arbitrator's alleged partiality during the nearly two-year arbitration process but only after she received an unfavorable result. This argument is waived.

## IV.    CONCLUSION

For the foregoing reasons, Matador respectfully requests that the Motion to Vacate Final Arbitration Award be denied.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By:    <u>*/s/ Mark A. Shoffner*</u>
Mark A. Shoffner
State Bar No. 24037490
mshoffner@bellnunnally.com
Alana K. Ackels
State Bar No. 24066760
aackels@bellnunnally.com
Mason G. Jones
State Bar No. 24116586
mjones@bellnunnally.com

2323 Ross Ave., Suite 1900
Dallas, TX  75201
Tel: 214/740-1400
Fax: 214/740-1499

**ATTORNEYS FOR DEFENDANTS
MRC ENERGY COMPANY and
MATADOR RESOURCES COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2021, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

Keith A. Clouse
Camille A. Avant
John M. Lynch
Clouse Brown, PLLC
1201 Elm St., Ste. 5250
Dallas, TX  75270

/s/ Mark A. Shoffner
Mark A. Shoffner

6104814_2.docx / 11559.3