# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SHERRY McGEE | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2159-S |
| | § | |
| MRC ENERGY COMPANY and | § | |
| MATADOR RESOURCES COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiff Sherry McGee's Motion to Vacate Final Arbitration Award ("Motion to Vacate") [ECF No. 1] Ex. 2. Along with the Motion to Vacate, the Court has also considered Defendants' Response to Plaintiff's Motion to Vacate Final Arbitration Award ("Defendants' Response Brief") [ECF No. 4], and the relevant record evidence. No reply was filed. For the reasons stated below, the Court **DENIES** the Motion to Vacate.

### I. BACKGROUND

Plaintiff Sherry McGee is an oil and gas engineer. Mot. to Vacate 2. She served as a "drilling engineer" for Defendant Matador Resources Company ("Matador"), where she was responsible for "managing day-to-day operations of an oil and gas rig while supporting other engineers and staff who were working directly on the rig." *Id.* at 3. Plaintiff claims that within two years of being hired by Matador, she was demoted to a different work assignment and removed from the drilling rig to conduct remote monitoring. *Id.* According to Plaintiff, she "was the only Drilling Engineer removed from a drilling rig . . . and the only female engineer assigned" to her new program. *Id.* Plaintiff asserts this program, known as MAXCOM, was "undesirable . . . for engineers due to the schedule, lack of work and responsibility," and "absence of opportunities for career advancement." *Id.* Matador characterizes things differently, maintaining that MAXCOM

was a "new engineering and geologic group that used cutting-edge technology to monitor and geo-steer Matador's drilling rigs in real time." Defs.' Resp. Br. 3-4. According to Matador, this was not a demotion, but rather "the type of role Matador envisioned for [Plaintiff] when she was hired." *Id.*

A few months after her reassignment, Plaintiff discovered she was pregnant and met with her supervisor to request a schedule accommodation. Mot. to Vacate 4. At the same meeting, Plaintiff complained about her job responsibilities. *Id.* Plaintiff also told her supervisor that she was being paid less than two other engineers, Fred Mihal ("Mihal") and Blake Hermes, and asked him to investigate this purported difference in compensation. *Id.* Less than two weeks after this meeting, Plaintiff's employment was terminated. The stated reason for her termination was that "she was 'upset' with her demotion . . . had a 'persistent negative attitude,' 'detested her job assignment,' and wanted to be moved back on a drilling rig." *Id.* at 5.

Following her termination, Plaintiff asserted claims against Matador and MRC Energy Company (a wholly-owned subsidiary of Matador, and together with Matador, "Defendants") for: (1) violations of the Equal Pay Act, 29 U.S.C. § 206(d); (2) retaliation in violation of the Equal Pay Act, 29 U.S.C. § 216(b); and (3) pregnancy discrimination under Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e, *et seq.* The parties arbitrated these claims before the American Arbitration Association ("AAA"), in accordance with an arbitration provision contained in Plainitff's employment agreement with Matador. *See Sherry McGee v. MRC Energy Company and Matador Resources Company*, AAA No. 01-19-0001-3586 ("Arbitration"). The Arbitration proceeded to a final hearing before former Dallas County court at law judge Robert C. Jenevein ("Arbitrator"), who entered a final award and take-nothing judgment in favor of Defendants ("Arbitration Award"). *See* Defs.' App. [ECF No.

2

5-1] at 36-42. The Arbitrator concluded that Plaintiff "was terminated because she hated her job, [her] contempt was undermining morale" at Matador, and that her "dissatisfaction, which she admitted, and which was apparent to those around her, led to her termination." Arb. Award 6.

Plaintiff then filed the Motion to Vacate in the 134th District Court of Dallas County, Texas. Defendants timely removed to this Court. *See* Not. of Removal [ECF No. 1]. Plaintiff seeks an order vacating the Arbitration Award for two independent reasons: (1) because the arbitrator declined to hear some evidence regarding a purported comparator under the Equal Pay Act, and (2) because of the arbitrator's "evident partiality." Mot. to Vacate 6-13.

First, Plaintiff argues that the Arbitrator improperly refused to hear evidence regarding former Matador employee Shane Hammons ("Hammons"), including his experience, background, job duties, salary, and employment at Matador. *Id.* at 6-8. Hammons was one of two possible comparators[1] that Plaintiff sought to establish at the final hearing. The Arbitrator did hear evidence on Plaintiff's other proffered comparator, Mihal, but distinguished him from Plaintiff because: (1) he was a mechanical engineer, not a geological engineer like Plaintiff; (2) his superior educational and career credentials, including competing job offers; and (3) his valuable drill bit experience. Arb. Award 4. Had she been allowed to present evidence regarding Hammons, Plaintiff argues, such evidence would have established he was "a business major rather than an engineer and thus, the type of engineering degree held by [Plaintiff] did not justify her lower pay."

---

[1] Plaintiffs under federal anti-discrimination statutes like Title VII and the Equal Pay Act may prove their claims by establishing they were treated differently from "comparators" who did not share the plaintiff's protected characteristics. *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018). The proffered comparator(s) must be "similarly situated" to the plaintiff. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–61 (5th Cir. 2009). A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications. *See Lavigne v. Cajun Deep Founds., LLC*, 654 F. App'x 640, 646 (5th Cir. 2016) (per curiam).

3

Mot. to Vacate 7. Plaintiff also points out that Hammons did not have any competing job offers or drill bit experience like Mihal. *Id.*

Second, Plaintiff contends that the Arbitration Award should be vacated because of alleged bias on the part of the Arbitrator. Specifically, Plaintiff argues that the Arbitrator is conservative, harbors "bias against women he perceives to be liberal," and that he must have perceived Plaintiff "to be 'liberal' based on her pursuit of claims related to equal pay and pregnancy discrimination for nearly three (3) years." *Id.* at 9. According to Plaintiff, "the Arbitrator expressed his bias while considering whether [she] made a valid pregnancy discrimination and equal pay complaint or whether she was just an angry, miserable female employee." *Id.*

In support of her argument, Plaintiff offers several purported Twitter posts that the Arbitrator either authored himself, "re-tweeted," or "liked." These include a post from the Arbitrator saying: "Democrats have not always been scum of the earth. That's happened starting in 1992 when they decided to embrace an amoral governor for President." *Id.* at 10. Another tweet asked about then vice-presidential nominee: "Love to hear why you think she adds anything to the ticket besides a black, feminine face. That's it." *Id.* at 11. The Arbitrator also allegedly "liked" posts saying: "Every liberal woman I know is filled with anger and miserable about everything," and "I'd like to see those BLM terrorists caught and hung up by their balls. If they don't have balls, hang em up by their ears [sic] piercings." *Id.* at 8, 10.

## II. LEGAL STANDARD

The Court's "review of an arbitration award is extraordinarily narrow." *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 819 (5th Cir. 2019). Section 10(a) of the Federal Arbitration Act ("FAA") provides the exclusive grounds to vacate an arbitration award. *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 353 (5th Cir. 2009) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552

4

U.S. 576, 578, 581, 583, 590 (2008)). Under this section, the Court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* at 352 (quoting 9 U.S.C. § 10(a)).

An arbitrator's legal or factual error ordinarily does not warrant vacatur. *Quezada v. Bechtel OG & C Constr. Servs., Inc.*, 946 F.3d 837, 844 (5th Cir. 2020) (citing *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.")). "Where the arbitrator is 'even arguably . . . acting within the scope of his authority the fact that a court is convinced he committed serious error does not suffice to overturn that decision.'" *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000)). Ultimately, review of an arbitration award is "very deferential." *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015). "The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it." *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016); *see also YPF S.A.*, 924 F.3d at 818 (same).

### III. ANALYSIS

#### a. *Witness Exclusion*

For vacatur of an arbitration award to be warranted under 9 U.S.C. §10(a)(3), the arbitrator's determinations must have deprived the moving party of a fair hearing. *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006). It is not enough for the arbitrator simply to have made an error of law. *Id.* Arbitrators have "broad discretion to make evidentiary decisions" and are not bound by the formal rules of evidence or procedure. *Int'l. Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003). As such, courts do not "look over the shoulder of the Arbitrator" but rather "only consider whether the Arbitrator provided a fair and full hearing consistent with the FAA." *Id.* at 496.

Plaintiff argues that the Arbitrator's refusal to hear evidence on Hammons as a comparator warrants vacatur of the Arbitration Award. However, the Court finds that this decision did not deprive Plaintiff of a fair hearing. Therefore, vacatur is not warranted.

During the course of the Arbitration, Plaintiff conducted discovery on twelve different possible comparators, yet never identified Hammons or pursued information about his qualifications or compensation in discovery. Plaintiff's first mention of Hammons during the Arbitration appears to be in her pre-hearing brief filed six days before the arbitration hearing, in which she requested an adverse inference that Hammons' salary was higher than Plaintiff's. Defs.' App. 33-35.

Defendants objected when Plaintiff attempted to testify at the final hearing about Hammons' salary and qualifications. When Plaintiff was unable present any evidence that Hammons was a proper comparator, the Arbitrator ruled that Plaintiff could not offer her own speculative testimony on the subject. *Id.* at 61-67. Plaintiff even testified that she did not know Hammons' salary. *Id.* at 61. As such, (as Defendants rightly point out) the Arbitrator did not

refuse to hear evidence on Hammons so much as Plaintiff was unable to offer any competent evidence that would have established him as a comparator. Plaintiff could have pursued information about Hammons during discovery, but she did not. Indeed, Plaintiff could have presented Hammons as a witness alongside her other four witnesses, but she did not call him to testify. *Id.* at 30-32 (identifying Hammons on Plaintiff's amended witness list). Ultimately, Plaintiff had ample opportunity to obtain and present evidence in an effort to establish Hammons as a comparator, but she did not do so. Thus, the Arbitrator's decision not to hear Plaintiff's testimony about Hammons did not deprive Plaintiff of a fair hearing. *Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009) (plaintiff could not demonstrate that exclusion of several witnesses deprived him of a fair hearing without submitting "any affidavits from the allegedly material witnesses he claims he was not allowed to call during the arbitration," or similar evidence"); *Castleman v. AFC Enters., Inc.*, 995 F. Supp. 649, 653 (N.D. Tex. 1997) (exclusion of contested evidence does not warrant vacatur unless it prevented a party from receiving a "fundamentally fair hearing").

Moreover, the Court agrees with Defendants that allowing testimony about Hammons would not have helped Plaintiff's case. Plaintiff testified that Hammons was not an engineer, and his title was "analyst." Defs.' App. 60. And Plaintiff's counsel described Hammons as a "business and finance guy," as opposed to a geological engineer like Plaintiff. *Id.* at 55. This provides ample basis to exclude Hammons as a comparator.

### b. *Bias*

Under 9 U.S.C. §10(a)(2), "evident partiality" requires more than a mere appearance of bias; it requires "a concrete, not speculative impression of bias." *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 281-82 (5th Cir. 2007) (en banc). The Court must "uphold[] arbitral awards unless bias was clearly evident in the decisionmakers." *Id.* at 286. The

arbitrator's alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative. *Morgan Stanley Dean Witter*, 452 F.3d at 399. As a result, "for the arbitration award to be vacated," the party challenging the award "must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to" its opponent. *Cooper*, 832 F.3d at 545. A party can establish "evident partiality by demonstrating that the arbitrator failed to disclose relevant facts or that he displayed actual bias at the arbitration proceeding." *Weber v. Merrill Lynch Pierce Fenner & Smith*, 455 F. Supp. 2d 545, 549 (N.D. Tex. 2006).

Plaintiff has not raised her allegations of bias and partiality on the part of the Arbitrator beyond a speculative level. As Defendants point out, Plaintiff's political or cultural views were not at issue and were never part of the Arbitration. Nor has Plaintiff identified any specific point during the Arbitration when the Arbitrator's alleged bias emerged. Indeed, Plaintiff ultimately does not connect the Arbitrator's purported bias to the parties, the claims in the Arbitration, or any of the determinations made by the Arbitrator beyond mere supposition that the Arbitrators political views affected his ruling. This is not enough to overcome the significant deference this Court must afford an arbitration award. *Householder Grp.*, 354 F. App'x at 852 (speculation of bias from arbitral panel whose "rulings were one-sided and against" the Plaintiff was not enough to warrant vacatur).

Moreover, Plaintiff did not object to the Arbitrator's appointment, despite likely being aware of his political leanings. As the Arbitrator disclosed, he and Plaintiff's lead counsel have known each other professionally for more than 20 years. Defs.' App 3, 22. Plaintiff's counsel knew or should have known the Arbitrator's purported political views when he was appointed to preside over the arbitration. Plaintiff had ample opportunity to object during the selection process,

had she wished to: the AAA provided a list of proposed arbitrators, and each party returned a ranking of the proposed arbitrators and had the opportunity to strike from the list any of the proposed arbitrators they wished to exclude. *Id.* at 2-3, 21. Then, after the Arbitrator was selected, the parties had an additional five days to raise any objections to his appointment. *Id.* Neither party objected to the Arbitrator's appointment. *Id.* at 3, 25-26.

The Fifth Circuit recently rejected a similar post-hoc attack on the impartiality of an arbitrator based on social media activity that was unrelated to the parties, attorneys, claims, witnesses, or testimony in the case. "Awarding vacatur in situation such as this," said the Fifth Circuit, "would seriously jeopardize the finality of arbitration. Just as happened here, losing parties would have an incentive to conduct intensive, after-the-fact investigations to discover the most trivial of relationships, most of which they likely would not have objected to if disclosure had been made." *Positive Software Solutions, Inc.*, 476 F.3d at 285; *see also Dealer Computer Servs., Inc. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012) ("A party seeking to vacate an arbitration award based on an arbitrator's evident partiality generally must object during the arbitration proceedings.").

### IV. CONCLUSION

For the reasons discussed above, Plaintiff Sherry McGee's Motion to Vacate Final Arbitration Award [ECF No. 1] Ex. 2 is **DENIED**.

**SO ORDERED.**

SIGNED March 22, 2022.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE

9